Appeal by the defendant from a judgment of the Supreme Court, Kings County (Dwyer, J.), rendered June 2, 2011, convicting him of murder in the second degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence.
Ordered that the judgment is reversed, as a matter of discretion in the interest of justice, and a new trial is ordered.
On the morning of January 1, 1991, the defendant allegedly shot and killed a man in Brooklyn. According to the People’s theory of the case, prior to the shooting, the defendant had left a nearby party at his sister’s apartment, and was searching for an intoxicated man who had caused a disturbance at that party. *767 The defendant was not apprehended until 2007. The first jury trial ended in a hung jury. At the second jury trial, which commenced in 2011, the People introduced testimony from Rukaiyah Long-Akrum, Karima Crosby, and Cassandra Cannon, among others.
Long-Akrum, Crosby, and Cannon testified that, after failing to gain entry to the party, they sat down on a bench in a nearby courtyard. At approximately 3:00 a.m., the victim, William Smith, known as “Sha,” joined the group. Thereafter, the defendant, appearing angry and upset, approached the group near the bench and, by one account, said, “I want to know where is the drunk guy who was beefing at the party,” and, by another account, said, “Did you see the guy?”
The defendant and Smith engaged in a verbal altercation. Crosby testified at the second trial that she recognized the defendant as a man who had previously come to the door at the party when she had unsuccessfully attempted to gain entry thereto. According to Long-Akrum and Cannon, the defendant eventually pulled out a black handgun and shot Smith, who later died as a result.
Crosby, who testified that she did not see a gun at any point, identified the defendant as the shooter at the second trial, approximately 20 years afer the incident. However, when Crosby was questioned by law enforcement officials on the day of the shooting, she stated that she would not know the shooter if she saw him again, and that she had been intoxicated during the entire incident. That same day, Crosby failed to identify the defendant from a photo array, which included a photograph of the defendant. Crosby testified that she was initially unable to identify the defendant in 1991 because she was young and scared at the time, but at no time did she assert that she had actually recognized the defendant’s photograph.
The defendant’s sister, Ramona Lloyd (hereinafter Lloyd), and the defendant’s girlfriend both testified on the defendant’s behalf. The defendant’s girlfriend testified that the defendant was with her throughout the night of the shooting, and Lloyd further testified that the defendant was not present at the party in her apartment. On cross-examination, Lloyd testified that, after the shooting, she and Patricia Drake, who was at the party, were brought to a police station for questioning. Over the defendant’s objection, the prosecutor asked Lloyd whether a detective had showed her a picture of the defendant at the station, and Lloyd answered in the affirmative. When the prosecutor asked Lloyd whether she “wanted to know what [Drake] was telling . . . the detectives, that would make them show you a *768 picture of your brother, right?”, the trial court sustained defense counsel’s objection. Further, the prosecutor asked Lloyd whether, after she left the police station, she had gone directly to Drake’s apartment; Lloyd responded that she initially went home and subsequently visited Drake’s apartment, where they had a “heated” conversation. The prosecutor asked Lloyd, over the defense counsel’s objection, whether the conversation was heated because Lloyd had introduced Drake to the defendant at the party. Lloyd answered in the negative. Also over defense counsel’s objection, the People were permitted to call a rebuttal witness who testified that Lloyd had told him that, after she left the police station, she went directly to Drake’s apartment.
During the summation, the People argued that when the police showed Lloyd a picture of the defendant at the police station, she knew that someone had told the police that the defendant was involved in the incident and, therefore, Lloyd was angry because she knew that Drake was in another room speaking to the police. The trial court overruled defense counsel’s objection, stating, “Yes. It’s an argument for the jury to consider.” The prosecutor further argued during summation that Lloyd went directly to Drake’s apartment after leaving the police station “[bjecause she wanted to know what . . . Drake said . . . about her brother being the one who had done this, and what was going on, and why the police were showing [Lloyd] a picture of her brother, asking her if that was her brother.” The trial court overruled defense counsel’s objection to that argument.
The jury deliberated over the course of four days. On its second day of deliberations, the jury asked the court, “Do we have any testimony or statement from [Patricia] Drake?”, and the court responded that there was no such testimony or statement from Drake. The jury found the defendant guilty of murder in the second degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree.
The defendant failed to preserve for appellate review his argument that his constitutional right to confront the witnesses against him (see US Const Sixth Amend; NY Const, art I, § 6) was violated by certain of the prosecutor’s questions on cross-examination and summation remarks that were phrased in such a manner as “to create in the jurors’ minds the impression” that a nonwitness had made statements to the police implicating the defendant (People v Jones, 305 AD2d 698, 699 [2003]; see People v Berry, 49 AD3d 888, 889 [2008]; People v Almonte, 223 AD2d 593, 594 [1996]) because he failed to raise this specific *769 argument at trial (see CPL 470.05 [2]; People v Waters, 91 AD3d 977 [2012]; People v Edwards, 81 AD3d 848 [2011]). Nevertheless, we conclude that this is an appropriate case in which to exercise our interest of justice jurisdiction to reach the defendant’s contentions in this regard (see CPL 470.15 [3] [c]; [6]).
Generally, during cross-examination, a party cannot introduce extrinsic evidence or call another witness to contradict a witness’s answers concerning collateral matters solely for the purpose of impeaching such witness’s credibility (see People v Pavao, 59 NY2d 282, 288-289 [1983]). As the defendant correctly contends, during the cross-examination of Lloyd, the prosecutor improperly gave the impression that Drake, who did not testify, implicated the defendant while the police questioned her (see People v Nesbitt, 77 AD3d 854, 856 [2010]; People v Berry, 49 AD3d at 889; People v Jones, 305 AD2d at 699; see also People v Mendez, 22 AD3d 688, 689 [2005]). Notably, the prosecutor acknowledged at the second trial that Drake had testified at the initial trial, and that Drake had not identified the defendant as having been present at the party.
The defendant’s constitutional right to be confronted with the witnesses against him prohibits the “admission of testimonial statements of a witness who did not appear at trial unless he [or she] was unavailable to testify, and the defendant ha[s] had a prior opportunity for cross-examination” (Crawford v Washington, 541 US 36, 53-54 [2004]; see People v Pealer, 20 NY3d 447, 453 [2013], cert denied 571 US —, 134 S Ct 105 [2013]). Here, the defendant’s constitutional right to be confronted with the witnesses against him was violated.
This error was exacerbated when the prosecutor, during summation, improperly argued that Lloyd went to Drake’s home after leaving the police station because Lloyd was concerned that Drake had implicated the defendant in the shooting. Moreover, when the trial court overruled defense counsel’s timely objection, it legitimized the prosecutor’s improper argument (see People v Ashwal, 39 NY2d 105, 111 [1976]; People v Bannerman, 110 AD2d 706 [1985]). The trial court further erred in permitting the People, over defense counsel’s objection, to elicit the rebuttal testimony that showed that Lloyd went directly to Drake’s home after leaving the police station.
“A constitutional error may be harmless where evidence of guilt is overwhelming and there is no reasonable possibility that it affected the outcome of the trial” (People v Best, 19 NY3d 739, 744 [2012]; see People v Thompson, 111 AD3d 56, 67 [2013]). Our dissenting colleague would find that any error would be harmless. We disagree. Even if there were overwhelm *770 ing evidence of the defendant’s guilt, there exists a reasonable possibility that the error contributed to the defendant’s conviction since, among other things, the second trial was conducted approximately 20 years after the homicide and the jury’s deliberations, which took place over the course of four days, included a request for a readback of a statement by or testimony from Drake, which proved to be nonexistent (see People v Crimmins, 36 NY2d 230, 240-241 [1975]).
Accordingly, the judgment must be reversed, and a new trial must be conducted.
The defendant’s remaining contention has been rendered academic in light of our determination.
Balkin, J.P, Leventhal, And, Austin JJ., concur.